CHARLES H. JOHNSON *vs.* SALEM TURNPIKE AND CHELSEA BRIDGE CORPORATION.

A turnpike company whose charter provides that they shall be liable to travellers for any damage which shall arise from the want of repairing their ways, are liable for damages so arising, though their officers or agents had no notice of the want of repair.

A traveller on a turnpike was injured by driving over a defect in the way consisting of a sloping pile of snow thrown by a snow-plough from the track of a street railway which ran along the turnpike. The charter of the railway company authorized them to lay their tracks on the turnpike, and provided that they should keep in repair all portions of the road occupied by the tracks, should be liable for all damages caused by the negligence of their agents in the management, construction, or use of the tracks, and should be liable over to the turnpike company for all damages recovered against them "by reason of such defect or want of repair." The turnpike company were, under their charter,

liable for all damages arising from defects in their ways. *Held*, that whether or nct the railway company were liable for the damage caused by the accident, the turnpike company were.

TORT to recover for personal injuries occasioned by the upsetting of a sleigh in which the plaintiff was riding about midnight of January 6, 1869, caused by a defect in the defendants' turnpike.

At the trial, in this court, before *Colt*, J., there was evidence tending to show that the defect, if any, consisted in the piling up of the snow by a snow-plough run on the track of the Boston & Chelsea Railroad Company, a street railway corporation, for the purpose of clearing the same ; that the snow was left, as is usual in the case of streets occupied and used by horse railways, sloping for about six feet from the track, and from thence to the sidewalk of considerable depth ; that the plaintiff's driver was driving along the sloping part of the snow; and that the snow had been recently removed by the snow-plough, and after nightfall had frozen where it lay. No evidence was offered that any of the defendants' officers had notice or knowledge of the defect.

The defendants asked the judge to rule " that no defect in the way was proved ; that if there was a defect caused by the railway corporation, in the exercise of powers conferred upon it by law, subject only to the supervision of the mayor and aldermen of Chelsea, the defendants would not be liable ; that by the statute (St. 1854, *c.* 445) incorporating the Boston & Chelsea Railroad Company the control of the turnpike, so far as occupied by their track, and affected by acts done in operating the railway, was taken from the defendants ; that the defendants, having no power to prevent defects caused by piling up the snow by the snow-plough, were not liable for an injury caused by such defect ; that the liability of the defendants under their charter (St. 1801, *c.* 63) was only the common law liability of persons charged with the duty of maintaining ways ; and that they were not liable, except in cases where they had notice of the defect, and would not be liable in case of a want of repair occasioned by a third person, and of which they had no notice."

The judge declined so to rule ; and ruled " that the defendants would be at least primarily liable for a defect arising in the operation of the railway; that under their charter the liability of the defendants was only the common law liability of persons charged with the duty of maintaining ways ; that the plaintiff could recover if the jury were satisfied that a defect existed in the way, and the defendants were chargeable with negligence in regard to it ; that the fact that the obstruction, if any, was occasioned by a third person, or by the railway corporation in the operation of their road, would not take away his right to recover; and that the plaintiff was not bound to prove actual notice of the defect to the defendants in order to charge them with negligence."

The jury returned a verdict for the plaintiff, and the defendants alleged exceptions.

*J. W. Perry & W. W. Warren*, for the defendants.

*G. A. Somerby & J. F. Pickering*, for the plaintiff.

MORTON, J. The charter of the defendant corporation provides that " said corporation shall be liable to pay all damages that shall happen to any person from whom the toll is demandable, for any damage which shall arise from the defect of bridges or want of repairing said ways, and shall also be liable to presentment by the grand jury for not keeping the same in good repair." St. 1801, *c.* 63, § 9. The General Statutes respecting turnpike corporations contain substantially the same provisions. Gen. Sts. *c.* 62, § 12. Under these provisions the defendants were liable to the plaintiff for damages arising from a defect or want of repair in their turnpike, though their officers and agents had no notice of its existence. *Yale* v. *Hampden & Berkshire Turnpike Co.* 18 Pick. 357. The instructions at the trial to this effect were therefore correct.

But the defendants except to the further instruction given, to the effect that the defendants would be liable, although the obstruction which caused the plaintiff's injury " was occasioned by a third person, or by the railway corporation in the operation o their road." We are of opinion that this instruction, applied to the facts of the case, was correct.

The defect proved was not any obstruction caused by the construction of the railroad. The evidence was that " the defect consisted in the piling up of the snow by a snow-plough run on the track of the Boston & Chelsea Railroad Company, for the purpose of clearing the same," and " that the snow was left sloping for about six feet from the track and from thence to the sidewalk." The plaintiff at the time of the injury " was driving along the sloping part of the snow." The defendants claim that, as the defect was caused by the railway corporation in the management and operation of its road, they are not liable, but the plaintiff has his exclusive remedy against the railway corporation.

The charter of the Boston & Chelsea Railroad Company provides that " said corporation shall maintain and keep in repair such portions of the streets in said cities and town as shall be occupied by their tracks, and shall be liable for any loss or injury that any person may sustain by reason of any carelessness, neglect or misconduct of its agents or servants, in the management, construction or use of said tracks, road or bridges ; and in case any recovery shall be had against either of said town or cities, or said Salem Turnpike and Chelsea Bridge Corporation, by reason of such defect or want of repair, said railroad corporation shall be liable to pay the said town, cities and bridge corporation respectively, any sums recovered against them, together with all costs and reasonable charges incurred by said town, cities or bridge corporation, or either of them, in the defence of any such suit or suits in which recovery shall be had; and shall not incumber any portion of the street or bridges not occupied by said road or tracks." St. 1854, *c.* 445, § 5. Similar provisions are contained in the general laws concerning street railway corporations, except that the portion of the street, which is to be kept in repair by the railway corporation, is extended to eighteen inches on each side of its tracks. St. 1864, *c.* 229, § 18. The sixteenth section of the statute last cited provides that " the board of aldermen of any city, or the selectmen of any town, in which a street railway is operated, may from time to time establish by an order such rules and regulations as to the rate of speed, mode of use of the tracks, and removal of snow and ice from the

same, as in their judgment the interest and convenience of the public may require."

We are not at liberty to decide, in this case, whether under these provisions of law, the Boston and Chelsea Railroad Company is liable for the damages sustained by the plaintiff. If it be assumed that it is liable, it does not follow that the defendants are not also liable to the plaintiff.

Several cases have been before this court, in which the question has arisen as to the liability of towns for defects in highways caused by railroad corporations in the construction or operation of their roads. In such cases, the liability of towns depends upon the test whether they have the power, and it is their duty, to remove the obstruction and put the highway in a safe condition.

In *Jones* v. *Waltham*, 4 Cush. 299, the plaintiff fell into a "cattle guard" at a railroad crossing, and it appearing that a barrier could not have been erected without interfering with the passage of the cars, the court held that the town had no authority or right to erect such barrier and was not liable for the want of it.

In *Sawyer* v. *Northfield*, 3 Cush. 490, it was held that the town was not liable for a defect in a bridge which a railroad corporation was bound by law to keep in repair.

In *Young* v. *Yarmouth*, 9 Gray, 386, it was held that the town was not liable for a defect caused by placing telegraph poles in a highway, upon the ground that the town had no right to remove them.

In *Davis* v. *Leominster*, 1 Allen, 182, it was held that the town was liable for a defect created by a pile of sleepers placed in the highway but within the limits of the location of a railroad, by the servants of the railroad corporation. In the opinion, Hoar, J., says: "The general liability of a town to keep the way safe and convenient cannot be limited by implication, except to the extent to which the construction and operation of the railroad deprives the town of the power to discharge the duty imposed upon it by law." Again: "The true practical rule must be taken to be, that if there is an obstruction to the travel on the highway at the crossing, which the town could remove or remedy

without interfering with the authorized construction or operation of the railroad, it is liable for any injury to a traveller occasioned by it."

We think the case at bar falls within the reason of the decision in *Davis* v. *Leominster*. The liability of. turnpike corporations is certainly not less extensive than that of towns. The obstruction which made the road defective, in this case, was a sloping pile of snow thrown on the travelled part of the way by the snow-plough of the railroad and extending about six feet from the track. It was within the power of the defendants to level or remove this without interfering with the use of the railroad. It was their duty to do so, if necessary to make their road safe and convenient. By neglecting to do so, they failed to perform the duty imposed upon them by law, to keep their road in good repair, and are liable to the plaintiff for such damages as he has sustained by reason of the defect or want of repair.

*Exceptions overruled.*