ANNIE D. NELSON *vs.* UNION RAILROAD COMPANY.

PROVIDENCE—JUNE 21, 1904.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Negligence. Evidence.*

In an action for negligence, by reason of the slipping of a trolley pole on one of defendant's cars, whereby an electric globe in close proximity to the tolley wire was broken and in falling injured plaintiff, who was waiting for a car to pass such point, evidence offered by plaintiff tending to show that other globes at this as well as at other points upon defendant's line had previously been broken in a similar way is admissible as showing defendant's knowledge of the danger.

TRESPASS ON THE CASE. Heard on petition of plaintiff for new trial, and granted.

TILLINGHAST, J. The material facts in this case, as the evidence offered tended to show, were as follows:

At the time of receiving the injury complained of by the plaintiff, she was standing on the northwest corner of Dorrance and Weybosset streets, in Providence, near to an upright pole, the property of the Narragansett Electric Lighting Company, which pole was then and there used for the purpose of supporting a yard-arm upon which an electric light was hung.

The plaintiff was waiting for an electric car, owned and operated by the defendant, to pass around the curve from Dorrance street into Weybosset street, and while thus waiting, and while said car was passing around the curve, the trolley-pole of the car slipped from the wire and struck the glass globe enclosing the electric light, and broke it or dislodged it from its position, whereupon it fell to the ground, and in its descent a piece of the glass struck the plaintiff and injured her.

The distance between the rail nearest the curbing and the curbing is about two feet and a half, and the distance between the pole referred to and the center of the two inside rails upon which the defendant's car was running was about four feet,

and the distance from said post to the nearest overhead trolley-wire was about four feet. The electric light in question hung between that nearest overhead trolley-wire and the pole, and, at the time of the accident, was within about a foot and a half of said trolley-wire.

At the trial of the case the plaintiff, for the purpose of showing that the defendant was negligent in connection with the happening of the accident and responsible therefor, offered to show that globes of the Electric Lighting Company at this point, as well as at other points upon the line of the defendant's road, had previously been broken in a similar way, namely, by the slipping of the trolley-poles from the trolley-wire. This evidence, being objected to by counsel for the defendant, was ruled inadmissible by the trial court, subject to the plaintiff's exception.

After the plaintiff's evidence was in, the court, upon motion of defendant's counsel, nonsuited the plaintiff, and the case is now before us upon the plaintiff's petition for a new trial upon the grounds (1) that the presiding justice erred in granting the nonsuit, and (2) that he also erred in his refusal to admit the evidence offered by the plaintiff as aforesaid.

(1)    We think the rulings complained of were erroneous, and that the petition for a new trial should be granted.

The declaration alleges that the defendant was negligent in the management, care, use, and control of its property and appliances at this particular time and place. And whether or not it was guilty of such negligence was the primary question at issue. And in order to show that the defendant was negligent, it was competent for the plaintiff to prove not only the close proximity of the trolley-wire to the lamp in question, but also the fact that the defendant knew of the danger arising therefrom. Indeed, the plaintiff was bound to show such knowledge, either expressly or impliedly, in order to make out her case; and we can see no better way of proving such knowledge than by showing that similar accidents had occurred before, not only on the particular curve in question, but also on other curves on the line of the road. That is, that lamps

had previously been broken by the slipping of the trolley-pole from the wire.

A similar question to the one now before us was raised in the case of *Smith* v. *Old Colony R. R. Co.*, 10 R. I. 22. That was a case to recover damages for the burning of the plaintiff's factory through the alleged careless management of the defendant's locomotive engine.

On the trial of that case evidence was allowed to be offered, under exception, to show that fires on the line of the road had originated from sparks escaping from the locomotives of the defendant corporation, both before and subsequently to the occurrence of the fire in question.

It was held by this court, in an opinion written by Durfee, J., that the fact that other fires had been communicated *before* the occurrence of the fire in question was admissible for the purpose of putting the company on its guard and stimulating it to increased watchfulness, and also to enable the jury to judge whether, in view of such previous occurrences, the company was at the time of the fire in the exercise of reasonable care. It was held, however, that testimony relating to fires of a later date should be carefully excluded as being irrelevant, and as having a tendency to excite prejudice against the company.

*Moran* v. *Corliss Steam Engine Co.*, 21 R. I. 386, is also in point. In that case it was held that in an action to recover for injuries received from an electric current, owing to the unsafe condition of the machinery on which the plaintiff was employed, evidence that slight shocks had been received from time to time by the workmen, from the lifting-chain, and that the defendant on account thereof had supplied rubber gloves to be used by the pourers of metal, on that account, was notice to the defendant. "These shocks," said Matteson, C. J., in delivering the opinion of the court, "were notice to the defendant of the leakage of electricity from the motor to the chain, and were also notice that if from any cause a sufficient current of electricity was brought to the motor, the leakage might be sufficient not only to charge the lifting-chain, but also the hauling-chain or other metallic portions of the

crane, unless properly insulated, with a dangerous current. Having this notice, we think the defendant was bound to have made the insulation between the motor and the hauling-chain so complete that the use of the hauling-chain would have involved no risk of injury by electricity." *MacDonald* v. *Railway Co.*, 25 R. I. 40, and *McGarrity* v. *Railway Co.*, *ib.*, 269, are to the same effect.

The law seems to be the same in other States. Thus in *Col. Morg. Co.* v. *Rees*, 21 Col. 435, which was an action for negligence in leaving the door of an elevator-well open, whereby the plaintiff, without any fault on his part, fell into said well, it was held that it was admissible for the plaintiff to show that the door was open at times antecedent to the accident, owing to a defect in the lock, in corroboration of the plaintiff's claim that the door was open at the time of the accident, and also as tending to show a previous and continuous defective condition and notice thereof to the defendant.

In speaking of the alleged error of the trial court in admitting such testimony, Mr. Justice Goddard, in delivering the opinion of the court, said: "The main contention under this head, is that the court erred in permitting plaintiff to show that the door in question was open at times antecedent to the accident, and that other persons came near falling into the shaft, for the reason that this testimony tended to show other and independent careless acts of the person in charge of the elevator at such times. It is clear that if such was the purpose and effect of this testimony, it would be inadmissible. But that such was not the purpose and object for which it was introduced is evident when the theory upon which the case was tried is kept in view. The whole scope and tendency of the evidence introduced on the part of plaintiff was to show that the elevator door was open at the time of the accident because of the defective condition of the lock; and in corroboration of that claim the evidence complained of was offered as tending to show a previous and continuous defective condition. The evidence was relevant for this purpose, and also competent to show notice and knowledge on the part of the company of the defective condition of the lock.

"Wharton, in his work on Evidence, after stating the ordinary rule contended for by counsel for appellant—that when a party is sued for damages, following from a particular act of negligence, disconnected, though similar negligent acts are admissible—states the rule applicable to this character of cases as follows: 'But when a party is charged with the negligent use of a specific agency, and when the case against him is that he did not use care proportionate to the danger, then the question becomes material whether he knew, or ought to have known, the extent of the danger. On such an issue as this it is relevant for the party aggrieved to put in evidence of disconnected acts, of which it was the duty of the defendant to have been cognizant, and which, if he were cognizant of them, would have advised him of the extent of the danger and would have made it his duty to take precautions which would, if faithfully applied, have prevented the injury sued for.'" Whar. Ev. § 41.

In support of the doctrine as thus stated many cases are cited. See also S. & R. Neg. (5th ed.), § 60b, and cases collected in notes 2 and 3.

If lamps or globes similarly situated to the one in question had frequently or even occasionally been previously broken by trolley-poles slipping from the wire while the cars of defendant company were rounding curves, that would certainly be sufficient to give the company notice of the liability of the happening of such an accident, and hence would require it to exercise that degree of care which would be commensurate with such liability.

As the evidence offered by the plaintiff was not only relevant, but of such a character as to have a material bearing upon the main issue presented by the pleadings, its rejection was clearly prejudicial to the plaintiff, and hence entitles her to a new trial.

Petition granted.

*James A. Williams,* for plaintiff.

*Henry W. Hayes, Frank T. Easton* and *Lefferts S. Hoffman,* for defendant.